Edward J. Gaynor, Edward K. Gaynor, Charles Sailor and Frederick E. Gleim, copartners, trading as E. J. Gaynor, Son & Co., to use of Charles Bartles, trustee, Appellants, *v.* The Williamsport and North Branch Railroad Company.

*Contract—Evidence—Parol evidence to vary written agreement.*

In an action by contractors against a railroad company it appeared that the plaintiffs by an agreement in writing had contracted to build a portion of the defendant's railroad. Owing to alleged misconduct of the company's engineer the plaintiffs claimed that they were unable to perform the contract. They subsequently met some of the officers and directors of the company, and a new contract in writing was entered into, modifying in some respects the first contract. One of the plaintiffs testified that at the time the second agreement was executed, one of the directors of the company had orally agreed that the contract price should be increased. Two witnesses corroborated to some extent this testimony, but neither of them sustained the claim of a parol agreement contemporaneous with and independent of the second written agreement. The president of the company directly contradicted the testimony of the contractor. *Held*, that the evidence was insufficient to sustain the alleged parol agreement.

*Railroads—Corporations—Directors—Contracts.*

Where the board of directors of a railroad company authorize the president of the company or, in his absence, the vice president to execute a contract, it is not within the province of a mere director to exercise the power thus limited to designated officials.

Argued March 16, 1898. Appeal, No. 471, Jan. T., 1897, by plaintiffs, from judgment of C. P. Sullivan Co., Feb. T., 1894, No. 131, on verdict for defendant. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Assumpsit on a contract for building a railroad. Before LYNCH, J., of the 11th judicial district, specially presiding.

Plaintiffs' statement was as follows:

The plaintiffs claim to recover from the defendant the sum of $100,000 as a balance due them, and hereby set forth a statement of their cause of action.

The defendant is a corporation created under the laws of the state of Pennsylvania, and by its charter it was authorized to construct a railroad from Laporte, in Sullivan county, to the

Philadelphia & Erie Railroad, at a point near Muncy station, in Lycoming county. The plaintiffs are and have been for many years engaged as contractors in the building of railroads.

On or about August 1, 1892, the said defendant advertised for proposals for the construction of an extension of their railroad from Nordmont, in Sullivan county, to Dohm's Summit, also in said county, a distance of eighteen miles. The plaintiffs put into the said railroad company a proposal in writing for the construction of said extension, and on or about August 17, 1892, they were notified by John Marston, Jr., the chief engineer of the said company, and by John Satterfield, the vice president thereof, that their bid had been accepted. Upon the same day, to wit: August 17, 1892, the plaintiffs called at the office of the said railroad company, in the city of Williamsport, and there met the same vice president and S. T. McCormick, the secretary of the company. They, the said plaintiffs, were then informed that it was the desire of the said company to put the contract in the name of one Edgar A. Taylor, who was not present at the said meeting, but that the faithful performance of the said contract would be guaranteed by John Satterfield, the vice president of the corporation, defendant, and by H. L. Taylor, a director of the said company. The contract had been prepared before the plaintiffs arrived at the office of the company and the plaintiffs then signed the same, to wit: upon August 17, 1892.

The said plaintiffs, immediately after the execution of the said contract, entered upon their work of constructing the said extension of the said railroad. They purchased quantities of supplies, employed a large number of workmen, transported and placed upon the ground tools, horses, mules and machinery of all kinds, erected buildings and had upon the ground everything requisite for the early construction and completion of the said extension of the said railroad. The said plaintiffs would have completed the whole of the work upon the extension of the said railroad as they were required by their contract, but were so hampered, hindered and interfered with by John Marston, Jr., the chief engineer of the said railroad company, that they were unable to complete the same, and the said chief engineer also and improperly and falsely classified and estimated the work done under said contract by plaintiffs.

Complaint was made from time to time by the said plaintiffs of said improper actions and conduct of said Marston to the president of the said railroad company, and frequent attempts were made to adjust the difficulties arising out of the carrying out of the said contract, and in all such attempts the president of the said railroad company and the said John Satterfield and H. L. Taylor were the persons with whom the negotiations were carried on.

All of the estimates of the work done by the said plaintiffs, upon said extension, were rendered directly by the said railroad company to the said plaintiffs, and the said Edgar A. Taylor never communicated with the said plaintiffs, and the president of the said railroad company and the said John Satterfield and H. L. Taylor in all instances conducted all negotiations and decided all questions arising out of the said contract, and plaintiffs never saw said Edgar A. Taylor.

The difficulties between the said railroad company and the said plaintiffs became such that the plaintiffs notified said company that they would not and could not go on with the construction of said railroad, alleging, among other things, that owing to the unwarrantable and unreasonable acts and requirements of said Marston, the cost of such construction would be much greater than was contemplated by the specifications and contract, and more than said plaintiffs would receive under the terms of said contract; whereupon it was agreed between said company and said plaintiffs that the questions of classification of material and definition of first-class masonry should be referred to Charles E. Webster and Henry K. Nichols, whose decision should be final and conclusive.

It was also agreed that all other questions in dispute should be adjusted at some future time, and the said railroad company urged the plaintiffs to go on and complete the work, and promised and agreed with them that if they would do so they should lose no money by the construction of the said railroad, and that if the prices for the work mentioned in the said contract were not sufficient to prevent the plaintiffs from losing any money, the said defendant would increase the said prices so that plaintiffs should lose no money.

This agreement was made at the office of the said company in the city of Williamsport. In pursuance of said agreement

and relying upon the promises of the said company, the said plaintiffs continued the construction of said railroad and expended thereon $100,000 and upwards, and said agreement to refer to said Webster and Nichols was reduced to writing and was signed by said plaintiffs and the signature of the said Edgar A. Taylor was procured by said company, and said referees made their report thereon upon November 21, 1892.

The said Marston, as chief engineer, neglected and refused to estimate the work done by said plaintiffs from time to time as classified and defined by said Nichols and Webster in their said report, and the said railroad company refused to adjust the other questions in dispute and to increase the price for the work mentioned in said contract, although, in fact, the said work cost said firm $100,000 more than the amount of money coming to said firm under said contract.

In consequence of the refusal of the said company to comply with its contract, the said plaintiffs were obliged to abandon the said work. Their personal property was seized by the sheriff of Sullivan county and was sold by him, and the plaintiffs now allege and will show upon the trial of their cause, that by reason of the premises there is due to them from the defendant the sum of $100,000.

At the trial the counsel for the plaintiffs offered in evidence a mortgage, dated September 1, 1892, between the Williamsport and North Branch Railroad Company, of the one part, and Fidelity Insurance, Trust and Safe Deposit Company, of Philadelphia, of the other part, recorded on September 22, 1892, for the sum of $2,000,000. For the purpose of showing that at the time they were inducing Mr. Gaynor to take the contract with Edgar A. Taylor they were contemplating the issuing of a mortgage for a large amount, and this for the purpose of showing the intention was to prevent Mr. Gaynor having a lien provided by the act of assembly.

Mr. Reading: The offer is objected to; first, because the mortgage is dated September 1, 1892, after the execution of the contract in evidence between Edgar A. Taylor and E. J. Gaynor, Son & Co., and said mortgage states that the same is given pursuant to authority granted by special meeting of the stockholders of the Williamsport and North Branch Railroad Company, held on August 30, 1892, and by meeting of the board of direct-

ors, held on August 30, 1892, authorizing the issue and execution of said mortgage; second, because the plaintiffs in this case have declared upon a contract which they allege is the contract of the Williamsport & North Branch Railroad Company with the plaintiffs, upon which they now seek to recover, and no mortgage subsequently executed could under the act of assembly preclude the lien if such contract is shown and found; third, because it is utterly incompetent, irrelevant and immaterial.

By the Court: The objections are sustained and the offer rejected. Bill sealed. [1]

The principal facts and a reference to testimony will be found in the opinion of the Supreme Court.

The court gave binding instructions for defendant. [2]

Verdict and judgment for defendant. Plaintiffs appealed.

*Errors assigned* were (1) ruling on evidence, quoting the bill of exceptions; (2) binding instructions for defendant.

*Guy E. Farquhar* and *James B. Reilly*, with them *J. Rush Thompson*, for appellants.—Parol evidence is admissible to show a verbal or contemporaneous agreement which induced the execution of a written agreement; it may have the effect of varying or changing the terms of the written contract: Bown v. Morange, 108 Pa. 69; Walker v. France, 112 Pa. 203.

A party who knows that a contract is made in his name by an authorized agent is estopped from denying the validity of such a contract by accepting the benefits of the contract: Meyerhoff v. Daniels, 173 Pa. 555; Hughes v. Bank, 110 Pa. 428; Manufacturing Co. v. Aughey, 144 Pa. 398; Lycoming F. Ins. Co. v. Woodworth, 83 Pa. 223; Jones v. Nat. Building Association, 94 Pa. 215; Mundorff v. Wickersham, 63 Pa. 87; Penna. Nat. Gas. Co. v. Cook, 123 Pa. 170; Manhattan Hardware Co. v. Phalen, 128 Pa. 110; R. R. v. Stewart, 41 Pa. 54; Allegheny City v. McClurkan, 14 Pa. 81; Philadelphia v. Gilmartin, 71 Pa. 140.

The consideration for the new contract was ample. If an agreement has been reduced to writing it is competent for the parties, at any time before the breach of it, by a new contract not in writing, either to waive, dissolve or annul the former agreement, or in any manner to add to or subtract from, or vary

or qualify the terms of it, and thus make a new contract, which is to be proved partly by the written agreement, and partly by the subsequent terms of it, engrafted upon what will thus be left of the original agreement: Goss v. Lord Nugent, 5 B. & Ad. 58; McNish v. Reynolds, 95 Pa. 483; Chamberlain v. McClurg, 8 W. & S. 31; Paxson v. Hewson, 8 W. N. C. 197.

*John G. Reading*, with him *T. J. & F. H. Ingham*, for appellee.—The board of directors of a corporation have the undoubted power to manage the affairs of the corporation, and to make contracts to bind the corporation. But that a single director has the power to make such contracts is a proposition which has never been sustained: Penna. R. R. Co.'s App., 80 Pa. 265.

The alleged statement of Hascal L. Taylor did not create such a contract as to permit the appellants to recover in this case, because the parties, subsequently to said alleged statement, put their engagements in writing, and such writing is not only the best, but the only, evidence of their agreement, unless fraud, accident or mistake is shown by such clear and indubitable evidence as the law permits: Martin v. Berens, 67 Pa. 459; McClure v. Peoples' Freight Ry., 90 Pa. 269; Phila. & Del. County R. R. v. Conway, 177 Pa. 369; Thomas & Sons v. Loose, Seaman & Co., 114 Pa. 35; Halberstadt v. Bannan, 149 Pa. 51; Van Voorhis v. Rea, 153 Pa. 19; Hallowell v. Lierz, 171 Pa. 577.

OPINION BY MR. JUSTICE McCOLLUM, January 2, 1899:

The parties to the contract of August 17, 1892, and to the agreement of November 2, 1892, were Edgar A. Taylor, of the first part, and E. J. Gaynor, Son & Co., of the second part. The August contract related mainly to the work to be done under it by the party of the second part in the construction " of the extension of the Williamsport and North Branch Railway from Nordmont to Dohm's Summit in Sullivan county, Pa.," to the cost or price of such work, and to the time and manner of making payments on account of it. The protection afforded to Gaynor, Son & Co. by the guaranty of H. L. Taylor and John Satterfield of the faithful performance by Edgar A. Taylor of his part of the contract was satisfactory, and the adequacy of it

has not been questioned. The November agreement was intended by the parties to it to provide a plan or method for settling the differences between Gaynor, Son & Co. and Edgar A. Taylor, which differences were founded upon the estimates and claims of engineer Marston, and were contested by Gaynor, Son & Co. It was not intended that the agreement should be limited to the settlement of the differences then existing, but that it should extend to and include differences of like nature arising from the same source. The negotiations relating to these differences resulted in the appointment of arbitrators whose adjustment of them was agreed to be final and conclusive between the parties.

The contention of the plaintiffs that their contract and agreement above stated were with the Williamsport and North Branch Railroad Company, and not with Edgar A. Taylor, appears to be plainly opposed to the contract and agreement aforesaid, and without warrant in either of them. It is not necessary, however, to consider on this appeal the question thus presented, because the learned court below, assuming the contention to be sound, determined that the alleged cause of action was not sustained by the proofs or evidence in the case. It should be stated in this connection that the plaintiffs make no claim upon the contract or agreement referred to, but that they base their cause of action upon an alleged parol agreement contemporaneous with and qualifying the written agreement of November 2, 1892, and ignoring, if not absolutely annulling, the contract of August 17, 1892. The position of the plaintiffs therefore presents but one question and that is whether there was a parol agreement entered into between them and the defendant company on November 2, 1892, by which the written contract and agreement aforesaid were set aside or materially modified. The alleged parol agreement is based on the alleged statement or promise of H. L. Taylor, a director of the company, who is represented by Gaynor as having voluntarily assumed in behalf of the company the payment of such sums of money as the plaintiffs might allege were in excess of the sums provided for in their written contract or agreement for the same or like work done under them. Gaynor testified that Taylor's statement or promise to him was as follows: " You shall not lose any money; if the prices are not sufficient we will increase them; we are

honest men and will treat you honorably." The testimony of Gaynor, as stated above, was corroborated to some extent by the testimony of Embick and Gleim, but neither of them sustained his claim of a parol agreement contemporaneous with and independent of the written agreement of November 2, 1892. On the contrary, Embick distinctly testified that as he understood it everything in dispute between the parties was referred to arbitrators under the written agreement aforesaid. Gaynor, Embick and Gleim were the only witnesses of the alleged promise of Taylor, and they all agree that, while it was made on November 2, it preceded the preparation and execution of the written agreement of that date. It is noticeable too that Gaynor is the only one of plaintiffs' witnesses who pretends that any matter in dispute between the parties was omitted from the written agreement. Against the pretense or claim of Gaynor on this point we have the unqualified and positive testimony of H. C. McCormick, president of the defendant company, who distinctly and emphatically stated that he embodied in the agreement of November 2 every question in dispute between the parties, and who, when asked whether H. L. Taylor said to E. J. Gaynor in his presence "you shall not lose any money; if the prices are not sufficient we will increase them, or words to that effect" replied as follows: "No such language was used by Mr. Taylor in my presence, in my hearing at that time, or any other time, or any language that could be construed to mean an undertaking upon the part of Mr. Taylor to pay Mr. Gaynor anything that he might say this work cost; if such a remark was ever made it was never made in my hearing." In considering the plaintiffs' claim of a parol agreement it must be remembered that the meeting of November 2, 1892, was for the purpose of adjusting the differences between them and Marston concerning the classification of the work to be done under the contract of August 17, and that these differences, together with a disagreement relating to "first class bridge masonry," constituted the principal, if not the only, matters discussed by them. These matters were satisfactorily adjusted and, as we have already seen, were fully embodied in the written agreement of that date. We therefore conclude upon a careful examination of the evidence that the plaintiffs failed to establish a parol agreement which modified in any degree the contract of Au-

gust 17, and that the only modification of that contract is to be found in the written agreement of November 2. We may add that the payments made upon and the receipts given for the estimates made subsequent to November 2 furnished no ratification of the parol agreement set up by the plaintiffs.

We concur in the conclusion of the learned court below that the alleged parol statement or promise of Taylor, one of the directors, did not create or constitute a contract between the plaintiffs and the railroad company which would bind the company. The authority to bind the company by a contract was given by the resolution of July 20, 1892, to its president or, in his absence, to its vice president. It was not within the province of a mere director to exercise the power thus limited to designated officials.

We find nothing in the rejection of the mortgage of September 1, 1892, of which the plaintiffs can justly complain.

Judgment affirmed.